UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

CRISTAL GARCIA,

       Plaintiff,

  -v-

UNIVERSITY OF MOUNT SAINT VINCENT,

       Defendant.

25-cv-9570 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

    This Opinion and Order addresses the motion of plaintiff Cristal Garcia for partial summary judgment on her claims under the New York City Human Rights Law ("NYCHRL"), ECF No. 20, and the motion of defendant University of Mount Saint Vincent ("the University" or "UMSV") for summary judgment, ECF No. 25. For the reasons discussed below, the Court denies Garcia's motion and grants UMSV's motion in its entirety.

I.   Background

    The following allegations are drawn from the parties' Rule 56.1 statements and corresponding counterstatements. Where a dispute exists, the record is construed in the light most favorable to the non-moving party.

    Plaintiff Cristal Garcia was enrolled as an undergraduate student at the University of Mount Saint Vincent from January 2024 until her expulsion in July 2025. ECF No. 23 ¶ 8; ECF No. 29 ¶ 22. Garcia has a medical diagnosis of Post-Traumatic Stress Disorder

("PTSD"). ECF No. 23 ¶ 1; ECF No. 34 ¶ 15. To mitigate the functional limitations of her condition, she utilizes a dog named Zeus. ECF No. 23 ¶¶ 2-3; ECF No. 34 ¶ 20. Garcia asserts that Zeus is a trained service animal who performs specific tasks, including deep pressure therapy ("DPT") to ground her during panic attacks, medication retrieval, and crowd control to establish a physical buffer zone in public spaces. ECF No. 23 ¶¶ 3-4.

In January 2024, Garcia submitted a formal accommodation request to the University's Office of Accessibility Services ("OAS") seeking permission to live with Zeus in on-campus student housing. ECF No. 23 ¶ 10. This request was accompanied by a letter from a licensed clinical social worker named Marisa Caiola, who indicated that Garcia's symptoms of PTSD were reduced with the inclusion of Zeus in her life and identified Zeus as an emotional support animal ("ESA"), rather than a service animal. Id. ¶¶ 5, 11; ECF No. 34 ¶ 11 (UMSV response).

On February 5, 2024, OAS preliminarily approved allowing Zeus to reside in the dormitory as an ESA. ECF No. 29 ¶ 29. This housing accommodation was conditioned upon Garcia providing an updated New York City dog license and a fully executed copy of the University's Assistance Animal Agreement. Id. While university electronic portals would indicate that a completed agreement had been successfully uploaded, Garcia later admitted during her deposition that she had refused to sign the document. Id. ¶ 62. Instead,

Garcia's twin sister signed plaintiff's name on the Assistance Animal Agreement to ensure the dog would not be barred from the residence hall. Id. ¶ 72.

Although the University permitted Zeus to remain inside Garcia's assigned residential dormitory room, school administrators barred the dog from entering classrooms, the campus dining hall, and athletic spaces for the eighteen-month duration of her enrollment. ECF No. 23 ¶¶ 14, 25, 29. Because she was blocked from bringing Zeus to physical classrooms, Garcia submitted a request in Spring 2025 to modify her schedule and complete her coursework entirely online. Id. ¶ 21. The University never approved this request. Id. ¶ 22. Amid rising tensions, Garcia filed a formal complaint with the New York State Division of Human Rights ("NYSDHR") on September 20, 2024, alleging disability-based discrimination. ECF No. 29 ¶ 1.

In June 2025, Garcia submitted a written request for the installation of an air conditioning unit in her dormitory room, citing medical necessity for herself and Zeus due to extreme summer heat. ECF No. 23 ¶ 33. The University denied her request, stating that residential students are responsible for purchasing their own personal AC units. Id. ¶ 35; ECF No. 34 ¶ 35 (UMSV response) A month later, Garcia removed a university-owned AC unit without authorization and installed it in her own residential quarters. ECF No. 29 ¶¶ 190-91. When campus housing and security officers

arrived at her dormitory room to reclaim the property, Garcia locked her door and engaged in a verbal confrontation with staff. Id. ¶¶ 192-209. She threatened to throw the appliance out of her window onto a public walkway below if security attempted to enter her room. Id. During the ensuing standoff, the AC unit fell out of the window and broke on the ground below. Id. Following an immediate administrative investigation into the incident, the University expelled Garcia for theft, property destruction, and disorderly conduct. Id. ¶¶ 215-16.

On October 21, 2025, Garcia's counsel requested and received an order dismissing her NYSDHR complaint. ECF No. 29 ¶ 5. Garcia then initiated the instant action on November 17, 2025. Id. ¶ 6. The parties have since cross-moved for summary judgment -- Garcia for partial summary judgment, and the defendants for summary judgment against Garcia's entire Complaint. ECF Nos. 20, 25.

II. Discussion

Garcia alleges that the University discriminated against her on the basis of her disability by failing to accommodate her service dog, Zeus, in campus classrooms, dining facilities, and common areas over an eighteen-month period. She further contends that the University failed to engage in the legally mandated cooperative dialogue under New York City law and ultimately expelled her in retaliation for her advocacy and her filing of a

4

complaint with the New York State Division of Human Rights ("NYSDHR"). She brings several causes of action:

- Violations of the Fair Housing Act (Count One);
- Violations of Section 504 of the Rehabilitation Act (Count Two);
- Violations of the New York State Human Rights Law (Count Three); and
- Violations of the New York City Human Rights Law (Count Four).

As noted, Garcia moves for partial summary judgment solely on Count Four, and the University moves for summary judgment on all of Garcia's claims.

A. Plaintiff's Motion for Partial Summary Judgment

Under the NYCHRL, Garcia must show that (1) she has a disability, (2) the University knew or should have known of the disability, (3) an accommodation would enable Garcia to use or enjoy the University's services and amenities, and (4) the University refused to provide an accommodation. See In re Comm'n on Hum. Rts. ex rel. Stamm v. E & E Bagels, Inc., 2016 WL 1644879, at *6 (N.Y.C. Comm'n Hum. Rts. Apr. 20, 2016); see also Stryker v. HSBC Secs. (USA), 2020 WL 5127461, at *12 (S.D.N.Y. Aug. 31, 2020) (explaining NYCHRL failure-to-accommodate claims).[1] The University

---

[1] The New York Court of Appeals has deferred to the Commission's interpretation of the NYCHRL because "the practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference." Louis Harris & Assocs. v. deLeon, 646 N.E.2d 438, 442 (N.Y. 1994).

may then, as a defense, establish that the sought accommodation poses an undue hardship. Stryker, 2020 WL 5124761, at *12.

Garcia moves for summary judgment on the basis that all the elements of the NYCHRL claim are met, and the University did not raise undue hardship as an affirmative defense in their Answer. ECF No. 24 at 8. Specifically, she argues that the University's blanket exclusion of Zeus from classrooms, the dining hall, and the soccer field for eighteen months constitutes a clear failure to accommodate. She emphasizes that the University's prohibition was based on an admittedly false rationale (prohibiting all animals from turf fields, ECF No. 23 ¶¶ 30-31), which undermines any argument that the exclusion was legally justified.

But Garcia's motion must be denied because a reasonable jury could conclude that she has not established that Zeus accommodated her disability. On this point, there is a dispute between the parties as to whether Zeus is a properly trained service animal. Garcia argues that the service-dog registration for Zeus and her email to the University explaining that her dog was trained in DPT and medication retrieval sufficiently indicates that Zeus was a properly trained service animal. ECF No. 23 ¶¶ 12, 17. Moreover, she argues that under the NYCHRL, the University cannot "require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 36.302(c)(7). The University counters that Garcia, in a

contradictory fashion, classified Zeus as both a service animal and an emotional support animal throughout her tenure at UMSV, that the plaintiff's therapist changed her classification to "service animal" only after initially identifying Zeus as an emotional support animal, and that the therapist herself conceded that she was "no expert in classifying animals," ECF No. 34 ¶ 112.

Whether Zeus is a properly trained service animal would clearly bear on the NYCHRL claim, but even putting that dispute aside, the central issue is whether Zeus -- properly classified or not -- had the ability to accommodate Garcia's disability. In other words, whatever Zeus's title, if a jury could conclude that Zeus would not materially improve Garcia's ability to use or enjoy the University's services, then summary judgment would be inappropriate on Garcia's motion because UMSV would not have improperly denied Garcia an accommodation. And indeed, Garcia has not conclusively established that Zeus had the ability to accommodate her. Her primary support for the contention that Zeus would improve her ability to interact with the University is her own statements about Zeus's training. ECF No. 23 ¶¶ 3-4 (citing Garcia's deposition). But the University has created a genuine dispute as to the veracity of this claim by pointing out that Garcia herself trained Zeus, ECF No. 34 ¶¶ 78-113, and that Zeus has exhibited behavior that suggests he is not particularly well trained generally (e.g., barking at students), id. ¶ 81.

7

Moreover, Garcia's additional support for Zeus's effectiveness in assisting her comes from her therapist's comments that "Garcia's symptoms of PTSD are significantly reduced with the inclusion of Zeus in her life." ECF No. 23 ¶ 11. But, again, the University has raised a genuine dispute of material fact as to whether this statement is true given the fact that Garcia's therapist herself testified that she had never met Zeus, that she was not an expert in service animals or emotional support animals, and that her understanding of Zeus was based entirely on Garcia's statements. ECF No. 34 ¶¶ 110-12.

The NYCHRL also contains a unique provision under Section 8-107(28) that creates an independent cause of action and attaches strict liability if a covered entity fails to engage in a good faith "cooperative dialogue." Once an accommodation has been requested, covered entities and accommodation-seeking persons are required to work together in an "interactive process" to assess whether the disability can be reasonably accommodated. See Haynes v. City of New York, 2024 WL 5508199, at *10 (S.D.N.Y. Mar. 26, 2024). In circumstances where there is an alleged breakdown of the interactive process, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." Id.

Summary judgment is, again, inappropriate on this claim. Courts have found plaintiffs responsible for breakdowns in the interactive process where requests for information go unanswered by the plaintiff. Haynes, 2024 WL 5508199, at *11. Here, Garcia seems to indicate that the lack of cooperative dialogue occurred with respect to each one of her requested accommodations. But UMSV points to facts suggesting that Garcia failed to provide relevant documentation and to request the relevant accommodations. ECF No. 34 ¶¶ 40-62, 114-42. For example, the University asserts that Garcia's academic accommodations application did not include "a request from plaintiff for Zeus to accompany her in the classrooms as an ESA []or a service animal." Id. ¶ 46. Given that inferences must be drawn in the non-moving party's favor -- here, the University -- Garcia has not demonstrated that she is entitled to summary judgment on this count.

Accordingly, the Court denies Garcia's motion for partial summary judgment.

B. Defendant's Motion for Summary Judgment

The University moves for summary judgment dismissing all of Garcia's federal, state, and city claims in their entirety. These claims can be broken up into discrimination (including failure to accommodate and engage in cooperative dialogue, as partially discussed above) and retaliation. The Court takes each in turn.

i.   Disability Discrimination Claims

9

Garcia's disability discrimination claims implicate four statutes: (1) the Fair Housing Act ("FHA"); (2) Section 504 of the Rehabilitation Act ("Rehab Act"); (3) the New York State Human Rights Law; and (4) the New York City Human Rights Law. Courts in this Circuit apply the same analytical framework to reasonable accommodation claims under the FHA, Rehab Act, NYSHRL, and NYCHRL, see Pinckney v. Caroll, 2019 WL 6619484, at *6 (S.D.N.Y. Dec. 4, 2019) (collecting cases), but treat the NYCHRL as a distinct and more expansive statute that must be analyzed "separately and independently," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).

Garcia first alleges that the University discriminated against her by failing to provide reasonable housing accommodations. As addressed in Garcia's briefing, she requested accommodations in the forms of an air conditioner for her room and housing where Zeus could be present. ECF No. 36 at 7. To establish a prima facie case of disability discrimination based on failure to accommodate, the plaintiff must demonstrate that (1) she has a disability within the meaning of the statute, (2) the defendant knew or reasonably should have known of the disability, (3) accommodation of the disability may be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling, (4) the requested accommodation is reasonable, and (5) the defendant

refused to make the accommodation. See Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014).

The University does not deny that the plaintiff has a disability, that the University knew about the plaintiff's disability, and that an accommodation may have been necessary to afford Garcia an equal opportunity to use and enjoy the dwelling. But it argues that summary judgment must be granted either because it did not refuse to make accommodations as to Garcia's housing situation or because such refusals were reasonable due to her failure to engage with the University in an interactive process. See Logan v. Matveeskii, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014). The Court agrees with UMSV that summary judgment is appropriate on the disability discrimination claims.

First, as to the air conditioner, Garcia failed to engage in good faith and reasonable efforts to communicate with the University. Failure to engage in the interactive process violates the NYSHRL and NYCHRL, and liability attaches to the party who caused the breakdown. See Krow v. PineBridge Invest. Hldgs U.S., LLC, 2022 WL 836916, at *9 (S.D.N.Y. Mar. 21, 2022). To evaluate who caused the breakdown, courts look to good faith and reasonable efforts. Id.

Here, there are two different events involving air conditioning. In April 2024, Garcia stated that she requested an air conditioner and was advised by the University to "get a fan"

11

until facilities turned on the air conditioning two days later.[2] ECF No. 34 ¶ 35. But Garcia does not allege why two days without an air conditioner prevented her from having an equal opportunity to use and enjoy the dwelling, or why an air conditioner was necessary to accommodate her disability. Nor, significantly, does she allege that she informed the University that the air conditioner request was related to her disability.

During the second occasion, in May 2025, Garcia emailed the University to ask for funds to purchase an air conditioner as "the temperature soared to approximately 110 degrees." ECF No. 1 ¶ 35; ECF No. 34 ¶ 37. But again, this was not characterized as a request for accommodation at the time. A month later, Garcia indicated that the installation of an air conditioner was a "medical necessity." ECF No. 34 ¶ 38. But she provided no medical documentation and later admitted at her deposition that she did not actually have a medical condition that would have required an air conditioning unit. See id. (UMSV response).

In other words, in both instances, the University knew of Garcia's disability, but she never communicated that the air conditioning unit would serve as an accommodation, let alone offer support for such a contention. Further, Garcia thereafter broke down the communication process with the University by stealing an

---

[2] This allegation appears nowhere in Garcia's Complaint.

air conditioning unit from another part of the University's campus around June or July 2025. ECF No. 29 ¶¶ 190-206. She then threatened to throw the air conditioning unit out the window, and then actually did so. Id. ¶¶ 205-09. In short, there is no reasonable dispute that Garcia, after not even trying to establish that the air conditioning unit was necessary as an accommodation, failed to engage in the required cooperative process with the University.

Second, with respect to the housing request, Garcia submitted her housing accommodation request to live with Zeus on January 26, 2024. Zeus was not permitted on campus until April 2024. During the interim months, Garcia alleges that she traveled for four hours per day to campus without Zeus, documented medical deterioration attributable to his absence, and observed that her grades suffered. An unreasonable delay in processing an accommodation request can constitute a constructive denial of the accommodation. See Matveevskii, 57 F. Supp. 3d at 267.

But, again, the record is replete here -- even taking every reasonable inference in Garcia's favor -- with evidence of Garcia's failure to engage in the accommodation process. Specifically, it indicates that she refused to sign the Assistance Animal Agreement (and in fact, later revealed that she had never signed it) and that she never explained what services Zeus provided to treat her disability until much later, ECF No. 29 ¶¶ 48-50, 154-57.

13

Therefore, for the same reasons as above -- failure to explain how Zeus's presence would serve as a reasonable accommodation to treat Garcia's PTSD and failure to engage in the cooperative process with the University -- summary judgment is appropriate.

Garcia also claims that UMSV discriminated against her when it did not permit Zeus in the classroom, when she did not receive remote classroom accommodations, and when Zeus was excluded from the campus dining hall and soccer field. But these claims must be dismissed because Garcia does not allege in her Complaint that she was not able to take her dog to class or that she was not generally allowed to take her dog onto the dining hall and field. Rather, in her Complaint, she merely notes that she was once kicked off the field for having her dog off-leash, and does not even mention when her dog was not permitted in the dining hall. ECF No. 1 ¶ 28; id. ¶ 41 (mentioning briefly that Garcia was "limited or hindered in her access to and enjoyment of on-campus amenities such as housing, dining halls, and recreational spaces because of the medical devices required to accommodate her disability"). And with respect to the online classroom accommodation, too, Garcia never alleges in her Complaint that this was an accommodation she identified, requested, or was denied.

Accordingly, summary judgment is granted in favor of the University on the FHA, Rehab Act, NYSHRL, and NYCHRL discrimination claims.

14

ii.  Retaliation Claims

Garcia also brings claims of retaliation under the FHA, Rehab Act, NYSHRL, and NYCHRL. To establish a prima facie retaliation claim under the FHA and Rehab Act, Garcia must show (1) her participation in a protected activity; (2) UMSV's knowledge of the protected activity; (3) an adverse action; and (4) a causal connection between the protected activity and the adverse action. See Burris v. Hous. & Servs. Inc., 2023 WL 1966120, at *9 (S.D.N.Y. Feb. 13, 2023). These claims are governed by the McDonnell Douglas burden-shifting framework. Id. A causal connection may be shown through (1) direct evidence of retaliatory animus; (2) disparate treatment of similarly situated individuals; or (3) temporal proximity between the protected activity and the adverse action. See Baldwin v. Goddard Riverside Cmty. Ctr., 53 F. Supp. 3d 655, 669 (S.D.N.Y. 2014), aff'd, 615 F. App'x 704 (2d Cir. 2015). Once a prima facie case is made, the burden shifts to UMSV to articulate a legitimate, non-discriminatory reason for its actions, after which the burden returns to Garcia to show pretext. See Birch Family Servs. v. Wlody, 2022 WL 1468160, at *2 (2d Cir. May 10, 2022) (unpublished).

The NYSHRL applies a "more liberal standard": Garcia must show that she took action opposing discrimination, and that UMSV "engaged in conduct that was reasonably likely to deter a person like Plaintiff from engaging in such action." Odermatt v. Mount

15

Sinai Hosp., 2026 WL 710365, at *10 (S.D.N.Y. Mar. 13, 2026). And the NYCHRL requires only that protected activity was "a motivating factor" in UMSV's action. Id. Under that standard, "summary judgment is appropriate [only] if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." Id. (quoting Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 76 (2d Cir. 2015)).

Garcia engaged in at least two categories of protected activity: her complaints of disability discrimination to UMSV beginning February 29, 2024, and her NYSDHR complaint filed in or around early October 2024. Both categories plainly constitute protected activity and UMSV does not argue otherwise.

The first act of retaliation that Garcia identifies is the denial of the Mott Scholarship, awarded to students experiencing homelessness. Garcia was turned down for the scholarship, while her twin sister was awarded the scholarship. Garcia argues this denial was retaliatory because the only meaningful distinction between her and her sister is that she had engaged in protected activity, while her sister had not. But UMSV offers a non-retaliatory explanation for the denial: Garcia was a transfer student, unlike her sister, and such status made her ineligible for the scholarship. In turn, Garcia argues that this reason is pretextual because her sister received the scholarship as a sophomore, outside the standard incoming-freshman program. ECF No.

16

35 ¶ 77. Further, Garcia notes that although the University had made the decision to limit scholarships to entering students due to a "great need," id. ¶ 76, there were extra spots available for the scholarship, id. ¶ 78.

The Court agrees with the University that even crediting Garcia's allegations, she has not demonstrated pretext. Garcia was a transfer student, and the Mott Scholarship is restricted to non-transfer students except those referred through specific partner programs. ECF No. 29. ¶¶ 170-173. This eligibility criterion is facially neutral and uniformly applied on its face. Garcia's comparator argument -- that her twin sister received the scholarship -- fails because the sisters are not similarly situated in the legally relevant respect. Crisbel enrolled as a non-transfer student; Cristal enrolled as a transfer. The fact that Crisbel received her scholarship as a sophomore rather than an incoming freshman may suggest some program flexibility, but it does not suggest that the transfer-student bar was selectively waived or that Garcia would have qualified absent her protected activity. A comparator must be similarly situated "in all material respects," Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003), and enrollment status is plainly material here.

Garcia also argues that the scholarship denial was discriminatory because a UMSV employee testified that scholarship spots went unfilled at the relevant time. ECF No. 35 ¶ 80. But

17

available slots could mean that eligible students were not applying. Garcia has produced no evidence that the committee turned her away due to her protected activity.

The second act of alleged retaliation that Garcia identifies is UMSV's letter banning Zeus from campus on October 21, 2024. She argues that this ban was an act of retaliation for her NYSDHR complaint, which UMSV received on October 9, 2024. Though the temporal proximity between the events helps Garcia, UMSV's reason for the ban is well-supported. The record reflects six documented incidents in which Zeus was not under control. ECF No. 29 ¶ 151. The September 27, 2024 pre-hearing letter from the University, which predates UMSV's receipt of the NYSDHR complaint, cited these same behavioral concerns. Id. ¶ 149. The behavioral record supporting the ban was therefore established before UMSV knew of the NYSDHR complaint, and the October 21 letter cited the same grounds as the September 27 letter.

Garcia's pretext argument is that UMSV issued the October 21 letter without reviewing video evidence she submitted in her defense. ECF No. 35 ¶ 59. Even credited, this is insufficient. To show pretext, Garcia must establish that UMSV's stated reason -- Zeus's history of unruly behavior -- was false, not merely that UMSV's process was imperfect. Garcia does not contend that the underlying incidents were fabricated, that Zeus was consistently

18

leashed and controlled, or that the student complaints were invented. She only contests their severity and context.

Finally, Garcia argues that her expulsion was retaliatory. But the air conditioner incident presents a clear, non-discriminatory reason for expulsion. Specifically, Garcia removed a University-owned AC unit from another room without authorization; refused to allow UMSV staff to retrieve it; cursed at staff; threatened to push the unit out the window; and then, on video, allowed the unit to fall and be destroyed. ECF No. 29 ¶¶ 190-213. Garcia told Bonner on video that she could "pick up [her] AC from the fucking window bitch." Id. ¶ 208. And after the unit fell, Garcia continued to berate staff. Id. ¶ 204. UMSV expelled Garcia for documented violations of three student Code of Conduct provisions. Id. ¶ 216. UMSV's President independently reviewed the record and upheld the expulsion on appeal. Id. ¶¶ 219-220. No reasonable jury could conclude that the expulsion was retaliatory.

The Court addresses the NYCHRL separately due to its liberal standard favoring plaintiffs. For each of the alleged retaliatory incidents, the University has rebuffed any indication that Garcia's reports or lawsuits played any role in its decisions. The scholarship denial was clearly based on Garcia's non-transferor status; Zeus's ban from campus tied directly into his behavior; and Garcia's expulsion was an obvious consequence of the incident involving the air conditioner.

19

Garcia nevertheless suggests that at least her expulsion claim must survive summary judgment because her expulsion letter cites Garcia's "entire student profile and portfolio" and "prior behaviors" as reasons for the expulsion, rather than the AC incident alone, ECF No. 35 ¶ 82 (citing ECF No. 28-28, Mendoza Dep. Tr. 78:2-84:12). But Garcia appealed her expulsion decision to the University President, who specifically upheld the expulsion based only on Garcia's actions during the AC unit incident. See ECF No. 28-81.

Accordingly, the Court finds that summary judgment is appropriate on all of Garcia's retaliation claims.

III. Conclusion

For the foregoing reasons, the Court grants the University's motion for summary judgment in its entirety and denies Garcia's motion. The Clerk of Court is respectfully directed to close ECF Nos. 20 and 25, enter final judgment in favor of the defendant, and close this case.

SO ORDERED.

New York, NY
June 15, 2026

_____
JED S. RAKOFF, U.S.D.J.

20